May it please the court. My name is Jean Homan. I represent the defendant appellants in this matter. I would like to reserve two minutes for rebuttal. Go ahead. Tell me what you've got on the clock. Your Honors, this case arises from the type of bread-and-butter incident to which law enforcement officers across this country are dispatched hundreds of times every day. Every day, every shift. You know, I've seen a lot of cases, but I've never seen a case where somebody calls and says, Hey, the guy's wife is in the house. Next thing that happens, they come in with guns and they put her in handcuffs without a warrant. But, Your Honor, there's a lot that happened. For a lot of years. And this may be bread-and-butter in Tacoma, but I've never seen it anywhere else. But, Your Honor, that's not the entire context of this incident. First off, the officers received a call from a man who said, My next-door neighbor is out of the state. He asked me to watch his house. And he said that nobody... How do they know he wasn't lying? Citizen informants, Your Honor, in this context... Do they have experience with the guy? No, we don't have any experience. How do they know the guy talked to the owner, even knows the owner, has talked to him recently? Your Honor, probable cause can be based on hearsay. And there was nothing that would cause the officers to question the veracity of this individual witness. Did they ask him? Did they ask him? Did they say, Hey, when did you last talk to the guy? Did they say anything like that to him? They did talk to the guy. They did actually contact their neighbor. They had not only the dispatcher, but they go, they knock on the door of the house, nobody's home. They come back and they talk to him and say, Hey, by the way, when was the last time you talked to the husband? There's no testimony in the record as to questioning of that kind. What they did, Your Honor, is they responded to the call. They did a security check to see if there was obvious signs of a break-in. And they knock on the door. And they knock on the door. And there's no answer, no obvious signs of a break-in. So they go back to the neighbor and they say, She appears to be gone, but if you see somebody else in the house, give us a call back. And he does see somebody else in the house. In fact, he sees this woman in the house. Somebody else knocks on the door and she answers him. Why don't they go back and knock on the door again? Now they see somebody in the house. Because, Your Honor, they have been told that the house is supposed to be empty, that nobody's supposed to be in there. But how does this guy know? He is just a guy living in another house on the street. Your Honor, this is no different than the case of Murdoch missed out. They have no evidence of break-in. No, in Murdoch, they didn't say this is the guy's wife. They said there's some stranger in the house. What Mr. Clinton said was my neighbor's ex-wife. There was no evidence and nothing said to the police. But you understand the difference between saying there are strangers in the house and saying there's somebody who has a personal relationship with the owner of the house. After they check out the premises and they find no evidence of break-in. So this is not a situation where there are people there with gurgler tools, people that might have guns or anything of that sort. No, Your Honor. This is the stuff of domestic dispute. No, Your Honor. He mentions a restraining order. Do they check out and see whether or not there's a restraining order? Your Honor, if I may. I'm asking a question. No, they didn't check to see if whether there was a restraining order. It would not have been possible for the officers to be. I think the jury in Tacoma treated you guys really well. I was surprised by how little they gave. Well, Your Honor, in the case of Murdoch missed out, the police relied upon a hearsay report from a neighbor. In Murdoch missed out, the neighbor calls the police and says a passerby told me that he just saw somebody run from this Murdoch residence. Did they say this was somebody connected to the owner of the house? Your Honor, there was nothing told to the police other than the resident who lived at that location, this was his ex-wife. The officers had no information as to how long they had been divorced. How do they treat somebody who is an ex-wife, somebody who they know hasn't broken in, the same way they treat somebody who they suspect has actually broken into their house, who is a stranger? I mean, it's just, you know, this is obviously what this is, is some sort of domestic relations problem that maybe bears investigating. It bears doing what they did the first time, knocking on the door and asking questions and saying, ma'am, do you have a right to be here or things of that sort. Well, Your Honor. But the very fact that they go up to the house and knock on the door the first time is all the proof necessary to infer that they didn't think this was an emergency situation, that this was a truly dangerous person inside. Why couldn't they get a warrant? Have they heard of a warrant at Tacoma? Your Honor. Do they have warrants? They most certainly have warrants. Then why didn't they go get a warrant? Because if you are responding to a burglary in progress, that is exactly the kind of exigent circumstance we would provide. If it's a stranger, but this neighbor said, I know who it is. So if the person leaves, they can identify him. They can look up the name in the database. They can go to her house, and they can find her if they really think that. Different when you have somebody saying there's somebody completely strange in the house, and that person maybe will leave. Maybe that person has guns. Maybe they will abscond. Even then, you can leave an officer outside to watch and make sure they don't leave. But in this case, this is the wife of the guy who owns the house, or the ex-wife. But, Your Honor, just because they have a formal marital relationship, without more information for the officers to know that she has any interest in that. It was simply between the total stranger in the house and somebody who is a friend, a relative, somebody that the police know has a personal relationship, for better or for worse, to the owner of the house. That is a huge difference. This is a person that can be identified. If they go to get a warrant, if they go before a judge, the judge would ask questions like, is there a restraining order? Would ask questions like, when is the last time this neighbor talked to the homeowner? Would ask questions like, do we know that this woman doesn't have a chance? Have you knocked on the door to ask her? Is there any evidence of danger? Is there any evidence that the officers might be in danger if they telephone the house or if they knock on the door? That's the kind of questions a judge would ask. That's why we have a warrant requirement, unless there's a very good reason not to. Your Honor, the circumstance the second time the officers responded to the location, in addition to being told that the person who resides in that house, who has said that house is supposed to be empty, they know that they did try and contact the house, that the individual did not, and they have reasonable cause to believe that she concealed her presence from them when they knocked the first time. They had no idea. All the record shows is that the neighbor says there was somebody in there. They go to the door. They knock. Nobody answers. They have no evidence whatsoever that she's in the house. When the neighbor called back the second time, he reported to the 911 dispatcher that somebody else knocked on the door and she answered it from inside the house. That is reasonable cause for the officers to at least suspect that she was present in the house when they knocked the first time. Or maybe that she came home. Maybe she came back. But, Your Honor, you're asking the officers to assess probable cause.  Based on the information known to the officers, what the officers did not know is that she was inside. Explain to me at that point why they could not have gone to get a warrant. Just explain to me that by itself. Because of the potential burglary in progress, you have the potential for the suspect to escape, the destruction of evidence. What do you think? Was there some danger that she'd go in and cook a meal or something, that she would ruffle the bed? Your Honor, she didn't live at that house. Well, as a matter of fact, she did live in that house. For a couple of days. Well, she did live in that house. But the officers had no reason to know that. And the facts and circumstances presented to the officers are what define probable cause. Why didn't they seek the warrant? Why didn't they seek the restraining order? Well, they didn't have enough information about the potential restraining order with what Mr. Clinton had reported. But they figured it's good enough for them, right? No, they never acted under the warrant. Wait a minute. He says there's a restraining order, and they think, well, good enough for him. She's not supposed to be there. We know that. No, Your Honor. They never acted under the authority of the restraining order. The restraining order was not the issue. The facts and circumstances presented to the officers appeared to be a burglary in progress. This case is no different than Gallego's. Wait a minute. The neighbor says, the neighbor says that's his ex-wife, and she's not supposed to be there because of the restraining order against her. Is that correct? No. The first time the neighbor called. He didn't say that? That's not exactly how it was said. And actually, the way he said it changes the context, Your Honor. Wait a minute. Did he say that there's a restraining order against her? Yes. The second time he called. Okay. The second time he called. I don't care if it's the first or the second time. The first time, nothing happened. The second time he called, he said there's – she's not supposed to be there. There's a restraining order against her. There may be a restraining order against her. I believe this is what he reported. Okay. And the information the officers had about her at that point in time is her name is Susan. She's a white female in her 40s. That is insufficient information. Sounds like the kind of thing where you want to send people in with guns and handcuffs. I mean, because, you know, women in their 40s can't do that. Ransack the place with a gun at her head, her on the floor in handcuffs. That's what you do. With that much information, that makes a lot of sense, doesn't it? No. With that coupled with the information that the house is supposed to be empty, that the man has asked his neighbors to watch the house and to call the police if they see anyone inside. You know, you had a trial before a jury. And I can sort of see taking the case to trial. But enough's enough, you know. You know, this is why we have a jury system. And I don't think you or your court counsel would have liked if something like that had happened in your house on the say-so of somebody who lives across the street. I don't think any of us would. You had a jury. And to me, it sounded like the jury gave your clients a hug and kiss for what they did. Boy, was this a parsimonious jury. You should have thanked them. Thank you, Your Honors. Okay. Is there anything you need to add? No, Your Honor. Thank you. The case is signed. You will stand submitted. We are adjourned.
judges: Kozinski, Fernandez, Carney